UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| WILBUR E. MULLETT, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | CAUSE NO. 3:02-CV-665 RM |
| ) | |
| SUPREME CORPORATION, ) | |
| ) | |
| Defendant ) | |

OPINION AND ORDER

Wilbur Mullett sues his former employer Supreme Corporation, alleging sexual and religious discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 § 701 et seq., as amended, 42 U.S.C. § 2000(e).[1] Supreme Corporation seeks summary judgment and, for the reasons that follow, the court grants the defendant's motion on all claims.

Mr. Mullet's response asks that he be appointed an attorney, so the court first addresses his request for counsel. Section 706(f) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1), empowers district courts to appoint an attorney to represent a plaintiff without charge "in such circumstances

---

[1] Mr. Mullett originally checked the "disability" box on his EEOC charge as a basis of discrimination, but he has since forfeited any ADA claim by omitting it from his complaint. Cheek v. Peabody Coal Co., 97 F.3d 200, 202 (7th Cir. 1996). Mr. Mullett's statement in his response that "[s]omeone is plain funny in the head if you think dwarfism isn't a disability, there is no reason for more words on that subject" doesn't properly amend his complaint since his response hasn't provided adequate justification for the 4-year delay in stating the claim that he now apparently wishes to bring. Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin, 367 F.3d 650, 658 (7th Cir. 2004).

as the court may deem just." Three factors are to guide the district court's discretion under § 706(f): (1) the merits of the plaintiff's case, (2) the plaintiff's diligence in attempting to obtain counsel, and (3) the plaintiff's financial ability to retain counsel. *See* Jones v. WFYR Radio/RKO General, 626 F.2d 576, 577-578 (7th Cir. 1980), overruled on other grounds, Randle v. Victor Welding Supply Co., 664 F.2d 1064, 1067 (7th Cir. 1981). Although any one of these factors may be determinative, the court should consider all three factors to make a complete record. *See* Darden v. Illinois Bell Telephone Co., 797 F.2d 497, 501 (7th Cir. 1986).

The court cannot say Mr. Mullett's claim is meritless, but he hasn't shown that his financial condition makes it impossible to retain counsel. Indeed, his motion indicates that he is "getting a record deal just like any other rock star out there" and that he is "gonna be touring a lot." He also hasn't demonstrated any diligence in attempting to obtain a lawyer. Accordingly, Ms. Mullett's request for counsel is denied.

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of

2

material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. Ritchie v. Glidden Co., 242 F.3d 713, 720 (7th Cir. 2001). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the non-movant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004).

The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in his favor. Lawrence v. Kenosha County, 391 F.3d 837, 841-842 (7th Cir. 2004); *see also* Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events'") (quoting Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999))

Because the facts set out by Supreme Corporation in its summary judgment motion are uncontroverted by a "Statement of Genuine Issues," as required by the local rules, the court assumes those facts to be true.[2] N.D. IND. R. 56.1; Smith v.

---

[2] Mr. Mullett responds to the defendant's motion by asserting the following: (1) "I was not haveing (sic) fun"; (2) "my job was at risk and I lost it"; (3) "look at all these papers"; (4) there's is (sic) not one fun word from my side here"; (5) "someone is plain funny in the head if you think dwarfism isn't a disability, there is no reason for more words on that subject"; (6) "Gina asked me to go out with her and worship the Devil"; (7) "Gina said shes (sic) gonna rule the work and I asked to leave me alone, then I got fired for a flare up (right here is a place where my has become completely upside down)"; (8) "do I have the right to say stop or please don't"; and (8) "I want to go through this court case (sic) someone treated me very wrong." Supreme Corporation has moved to strike Mr. Mullett's response as untimely. Although the court has the discretion to strike Mr. Mullett's response for failing to comply with the local rules, Ammons v. Aramark Uniform Services, Inc., 368 F.3d 809, 817-818 (7th Cir. 2004), even when his response is considered, the defendants are still entitled judgment on all claims, so the motion to strike is denied.

Lamz, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission."). Mr. Mullett's response does not automatically render summary judgment appropriate. FED. R. CIV. P. 56(e). Supreme Corporation must still show itself to be entitled to judgment under the law, and for the reasons that follow, the court finds it has done so.

Mr. Mullett says he was discriminated against because of his sex and religion. His EEOC charge states that he has been "sexually harassed by every by almost (sic) every girl at the job," that his coworkers told him that he "should worship the devil and that [he didn't] know how to react to things because [he is] Amish," and that his "supervisors were all aware of it." His complaint alleges he was "screamed at, harassed, psyched out, on almost all walks of life and opinions, than (sic) fired." His response to the defendant's summary judgment motion asserts that he "was not having fun," a female employee asked him to go out with her and "worship the devil," and that his "job was at risk and [he] lost it." It appears from Mr. Mullett's fillings that he asserts two claims: (1) a claim of hostile work environment created from sexual and religious harassment and (2) a claim of wrongful discharge.

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." Mr. Mullett may establish a Title VII violation by proving that

4

discrimination based on sex or religion created a hostile or abusive work environment. Moser v. Indiana Dept. of Corrections, 406 F.3d 895, 902 (7th Cir. 2005); Venters v. City of Delphi,123 F.3d 956, 974-975 (7th Cir. 1997).

An actionable hostile environment claim requires a plaintiff to prove: (1) that the work environment was both subjectively and objectively offensive; (2) that the harassment was based on membership in a protected class; (3) that the conduct was severe or pervasive; and (4) that there is a basis for employer liability. Mendenhall v. Mueller Streamline Co., 419 F.3d 686, 691 (7th Cir. 2005); Hall v. Bodine Elec. Co., 276 F.3d 345, 352 (7th Cir. 2002). To determine whether a plaintiff's work environment was hostile, courts examine all of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Moser v. Indiana Dept. of Corrections, 406 F.3d at 902 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment — an environment that a reasonable person would find hostile or abusive — is beyond Title VII's purview." Id. (quoting Harris v. Forklift Sys., 510 U.S. at 21-22).

Supreme Corporation says the record contains too little evidence to allow a finding that Mr. Mullett was subject to severe and pervasive religious-based conduct that created an objectively hostile work environment. Mr. Mullett testified at his deposition that he overheard his supervisor Jurgen Faldoe and other co-

5

workers discuss his Amish heritage and how he "might not be like the rest of them." Mr. Mullett doesn't know the specifics of the conversations. He also testified that a co-worker told him that "Jesus got killed."

Although inappropriate, these few isolated comments made over Mr. Mullett's 11-year period of employment cannot be described as severe and pervasive conduct. *See, e.g.,* Singh v. Town of Mount Pleasant, 172 Fed. Appx. 675, 681 (7th Cir. 2006). Nothing in the record indicates these comments unreasonably interfered with Mr. Mullett's work performance. Moreover, many of his co-workers, including two brothers, were also Amish. Given the totality of the circumstances, the court cannot say the evidence in the record shows an environment sufficiently hostile that a reasonable person would find it abusive, even if Mr. Mullett himself did. Ngeunjuntr v. Metropolitan Life Ins. Co., 146 F.3d 464, 467 (7th Cir. 1998). The defendants are entitled to summary judgment on Mr. Mullett's religious harassment claim.

Supreme Corporation also maintains there is insufficient evidence to demonstrate an objectively hostile work environment based on sexual harassment. Mr. Mullett's deposition testimony describes two instances in which female employees allegedly made sexually explicit comments in his presence. The first incident involved what Mr. Mullett characterized as his co-worker Gina Miller hitting on him: "one time she said, she – I don't know what she was saying that got directed to me, but I think maybe she was … It was like, I'd [Ms. Miller] screw someone if they never had sex before, so they could have sex." Mr. Mullett

6

explained that was unsure whether the comment was directed at him, but that the comment "didn't really bother [him]." He testified that Ms. Miller made other comments, but he didn't confirm whether the comments were sexual in nature. Another incident involved a female co-worker Vicki Murphy, who according to Mr. Mullett, was having an argument in his presence when she told her manager she would perform a sexual act on Mr. Mullett. Mr. Mullett stated that neither Ms. Miller, nor any other co-worker touched him.

Looking at all the circumstances, the court cannot say the sexually explicit comments made in Mr. Mullett's presence rise to the level of creating an objectively hostile work environment. While vulgar and distasteful, these few isolated comments also aren't sufficiently severe and pervasive as to show an environment that a reasonable person would find abusive. *See, e.g.,* McPherson v. City of Waukegan, 379 F.3d 430, 438-439 (7th Cir. 2004) (holding that plaintiff's complaints that her supervisor inquired about her bra color, whether he could "make a house call" when she called in sick, and the one occasion when he pulled back her tank top with his fingers were inappropriate, but insufficient to demonstrate a hostile work environment); Baskerville v. Culligan Intern. Co., 50 F.3d 428, 430-431 (7th Cir. 1995) (noting the difference between actionable harassment and the "occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers"). Neither Ms. Miller nor Ms. Murphy touched or threatened Mr. Mullett, and nothing in the record suggest these comments unreasonably interfered with his work performance. The court cannot say these

7

infrequent comments alone crossed the line between conduct that is objectionable and conduct that is harassing. *See* Baskerville v. Culligan Intern, 50 F.3d at 431; Gleason v. Mesirow Financial, Inc., 118 F.3d 1134, 1146 (7th Cir. 1997). The defendants are entitled to are entitled to summary judgment on Mr. Mullett's sexual harassment claim.

Mr. Mullett also says he was wrongfully terminated. A wrongful termination claim may be proven directly or indirectly. Scaife v. Cook County, 446 F.3d 735, 739 (7th Cir. 2005). His allegations are unclear as to whether he asserts he was fired because of his sex and religion, or in retaliation for engaging in a protected activity. Regardless of the reason Mr. Mullett believes he was fired, he cannot avoid summary judgment under the direct method of proof since there is no evidence in the record, direct or circumstantial, from which a rational trier of fact reasonably could infer that he was fired because of his sex, religion, or his participation in a protected activity. Sylvester v. SOS Children's Villages Illinois, Inc., 453 F.3d 900, 902-905 (7th Cir. 2006) (clarifying what a plaintiff must show to established a prima facie case using the direct method of proof).

Mr. Mullett's discrimination and retaliation claims still might survive summary judgment under the indirect method of proof if he establishes a prima facie case. Scaife v. Cook County, 446 F.3d at 739. In both the discrimination and retaliation contexts, once the plaintiff has established his prima facie case, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action. Id. If the defendant provides a legitimate

8

reason, the burden shifts back to the plaintiff to show that the defendant's proffered reason is merely pretextual. Id at 739-740. While it appears from the record Mr. Mullett cannot make a prima facie case of discrimination or retaliation, and so summary judgment would be appropriate, Supreme Corporation has come forward with evidence of legitimate reasons for the discharge, so the court proceeds directly to the issue of pretext. Abioye v. Sundstrand Corp., 164 F.3d 364, 368 (7th Cir. 1998).

Pretext may be established directly by showing that the employer "was more likely than not motivated by a discriminatory reason," or indirectly by presenting evidence that the "employer's explanation is not credible." Logan v. Caterpillar, Inc., 246 F.3d 912, 920 (7th Cir. 2001). A plaintiff shows pretext indirectly by presenting evidence that (1) defendant's explanation for the adverse job action had no basis in fact; (2) the explanation was not the "real" reason for the adverse job action; or (3) the reason given was insufficient to warrant the adverse job action. Id. Supreme Corporation says Mr. Mullet's violation of its policy relating to harassment and employment relations constituted the legitimate, non-discriminatory reason for terminating his employment. *See* Id at 921 (employer articulated legitimate nondiscriminatory reason for terminating employee based on its gathering of substantial evidence that employee had violated company harassment policy).

Supreme Corporation's work environment policy and code of conduct provide that "employees should be able to enjoy a work place free of all forms of

9

discrimination, including harassment on the basis of race, color, religion, gender national origin, age, and disability," and "employees [who] engage in conduct contrary to these interests ... will receive discipline appropriate for the misconduct." One example of conduct which can lead to discharge is the "[w]illful disobedience of a reasonable order or instruction given [to] an employee by a ... supervisor." In his affidavit, Superintendent William Dorsey says it was Mr. Mullett who harassed co-workers and created a hostile and abusive environment. Mr. Dorsey describes how Mr. Mullett would, without provocation, verbally harass his co-workers through his use of obscene language. His investigation into several incidents revealed that many employees avoided contact with Mr. Mullett for fear of provoking a violent reaction from him. Mr. Dorsey met with Mr. Mullett about several alleged episodes involving co-workers: (1) in one meeting he wrote-up Mr. Mullett for an incident where Mr. Mullett told a co-worker, in reference to Ms. Miller, that he would "kill the bitch"; (2) in another meeting, he warned Mr. Mullett that calling Mr. Faldoe a liar wouldn't be tolerated; (3) in two additional meetings, he again warned Mr. Mullett about his continual threats towards Mr. Faldoe and his use of obscene language toward Ms. Miller and other female employees on the production line; and (4) during their final meeting, Mr. Dorsey terminated Mr. Mullett after a report that Mr. Mullett had again verbally abused Ms. Miller. Mr. Mullett was officially reprimanded or disciplined in all four incidents for which the defendants submit disciplinary reports.

Mr. Mullett's response doesn't point to any evidence that refutes Mr. Dorsey's assertions, or that suggests Supreme Corporation's non-discriminatory reason for terminating him isn't credible. In fact, Mr. Mullett doesn't dispute that his behavior is the true grounds for his termination. In his response he states, "Gina said shes (sic) gonna rule the world and I asked to leave me alone, then I got fired for a flare up." During his deposition, Mr. Mullett admitted that he "could have easily" called Ms. Miller a "bitch," that he told Mr. Faldoe to "fuck off," and that he was called into Mr. Dorsey's office on at least four occasions for using profane language and insubordination. Mr. Mullett may disagree with his termination, but "the inquiry is not whether the reason for the firing was a correct business judgment but whether the decision makers honestly acted on that reason." Bahl v. Royal Indem. Co., 115 F.3d 1283, 1291 (7th Cir. 1997). Mr. Mullett hasn't shown the proffered reason is pretextual, so Supreme Corporation is also entitled judgment as a matter of law on his wrongful termination claim.

For the foregoing reasons, the defendant's motion for summary judgment on all claims [Doc. No. 28] is GRANTED; the defendant's motion to strike the plaintiff's response [Doc. No. 33] is DENIED AS MOOT; the plaintiff's motion for appointment of counsel [Doc. No. 32] is DENIED; and the plaintiff's request for settlement [Doc. No. 34] is DENIED AS MOOT. The clerk shall enter judgment accordingly.

SO ORDERED.

Entered:  September 12, 2006

11

                                                     /s/ Robert L. Miller, Jr.  
                                                     Chief Judge  
                                                     United States District Court

cc:    counsel of record  
       W. Mullett